**UNITED STATES, Appellee,**

v.

**Sergeant Jessica E. ESTRADA, United States Army, Appellant.**

**ARMY 20070778.**

U.S. Army Court of Criminal Appeals.

5 Aug. 2009.

For Appellant: Colonel Mark A. Tellitocci, JA; Lieutenant Colonel Matthew W. Miller, JA; Lieutenant Colonel William E. Cassara, JA (on brief in response to specified issue); Colonel Christopher J. O'Brien, JA; Lieutenant Colonel Steven C. Henricks, JA; Major Teresa L. Raymond, JA (on brief).

For Appellee: Colonel Denise R. Lind, JA; Lieutenant Colonel Francis C. Kiley, JA; Major Christopher B. Burgess, JA; Captain Lynn I. Williams, JA (on brief in response to specified issue); Colonel Denise R. Lind, JA; Lieutenant Colonel Mark H. Sydenham, JA; Major Christopher B. Burgess, JA; Captain Lynn I. Williams, JA (on brief).

Before HOLDEN, Senior Judge, HOFFMAN, and CONN, Appellate Military Judges.

OPINION OF THE COURT

HOFFMAN, Judge:

A military judge sitting as a special court-martial convicted appellant, pursuant to her pleas, of making a false official statement (thirteen specifications) and larceny of government funds, in violation of Articles 107 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 907 and 921 [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for ninety days, and a reduction to Private E1. The convening authority reduced the sentence to confinement to fifty-seven days and approved the remainder of the adjudged sentence. This case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

Appellant argues her receipt of an administratively-issued honorable discharge prior to the convening authority's approval of her adjudged bad-conduct discharge remits the punitive discharge and renders it a nullity. After considering the assignment of error and the applicable service regulations, we specified the following related assignment of error:

WAS ANY PURPORTED DISCHARGE BEFORE INITIAL ACTION VOIDED BY THE PRIOR PREFERRAL OF CHARGES[?] *SEE* ARMY REG. 27–10, LEGAL SERVICES: MILITARY JUSTICE, PARA. 5–16 (16 NOV. 2005) [HEREINAFTER AR 27–10].

We hold AR 27–10, para. 5–16, automatically voided any purported discharge because the administrative discharge occurred prior to initial action.

## BACKGROUND

On 12 March 2007, the government preferred charges against appellant for offenses she committed while an activated Reservist serving at MacDill Air Force Base, Florida.[1] Between approximately 9 November 2005 and 31 December 2006, appellant filed a series of false Government Travel Vouchers (DD Forms 1351–2) with supporting fraudulent receipts to claim rental property expenses she did not incur. Appellant owned and lived in a home in Dover, Florida during the charged period.

On 9 July 2007, the military judge tried and sentenced appellant. Her case, which included a sentence to a bad-conduct discharge, then proceeded to the post-trial processing phase. After serving a relatively short period of confinement, appellant was released and placed on voluntary excess leave on 25 August 2007.

On 24 and 25 September 2007, appellant received two different sets of administrative orders. The first set, issued by officials at Fort Benning, Georgia, released her from active duty and returned her to the Reserve Component, effective 24 September 2007. The second set, issued by United States Army Human Resources Command (HRC), discharged her from the reserve component in the grade of Private E1 with an honorable characterization of service, effective 25 September 2007. In conjunction with the first set of orders, appellant was issued a Dep't of Def., Form 214, Certificate of Release or Discharge from Active Duty (Feb. 2000) [hereinafter DD Form 214].

On 2 November 2007, the convening authority took initial action on appellant's case, *inter alia,* approving the adjudged bad-conduct discharge but not ordering it executed.[2]

Approximately sixteen months after the discharge was issued, on 6 January 2009, HRC voided appellant's discharge to the reserve component because it was erroneously issued. On 12 January 2009, Army personnel officials at Fort Benning, Georgia, voided appellant's DD Form 214.

According to an affidavit and supporting documents filed with this court by the defense and attached to the record of trial, "the finance records indicate [appellant] is not on active duty, is not owed any additional money, and does [not] owe any debts to the government.... [A]ppellant was honorably discharged from the United States Army after satisfying her service obligation." In pleadings, the government concedes appellant received an otherwise valid honorable discharge.

## LAW

■ Generally, for a Soldier to be effectively discharged or released from active duty, "there must be: (1) a delivery of a valid discharge certificate; (2) a final accounting of pay; and (3) the undergoing of a 'clearing' process as required under appropriate service regulations to separate the member from military service." *United States v. Harmon,* 63 M.J. 98, 101 (C.A.A.F.2006) (quoting and citing *United States v. King,* 27 M.J. 327, 329 (C.M.A.1989)).

In *Smith v. Vanderbush,* 47 M.J. 56, 57 (C.A.A.F.1997), although the accused had been charged and arraigned, the United States Court of Appeals for the Armed Forces (CAAF) found jurisdiction over the accused terminated when he received a discharge certificate (DD Form 214) separating him on the expiration of his term of service.[3]

---

1. Although not necessary for our resolution of the issue before us, we note appellant was "flagged" for more than three months before charges were preferred. The legal effect of a flag is to preclude various favorable actions, including a discharge, when a person is the subject of an investigation that may lead to trial by court-martial. *See* Army Reg. 600–8–2, Personnel— General: Suspension of Favorable Personnel Actions (Flags), para. 1–14. *g* (23 Dec. 2004).

2. This is consistent with Rule for Courts–Martial [hereinafter R.C.M.] 1113(c)(1). A punitive discharge cannot be executed until appellate review has been waived or completed. *See* R.C.M. 1209.

3. The accused's command had never "flagged" appellant so as to preclude the possibility of an erroneous discharge.

The court noted the Army could have "provided regulatory procedures to ensure that no official other than a convening authority (or other designated official) was empowered to issue an administrative discharge to an accused after arraignment." *Id.* at 58.

In *Steele v. Van Riper,* 50 M.J. 89, 92 (C.A.A.F.1999), the CAAF considered the effect of an administrative discharge given after trial, but prior to the convening authority taking initial action on a sentence that included a punitive discharge. The CAAF held: "The earlier honorable discharge through administrative channels had the effect of remitting the [adjudged] bad-conduct discharge ... [, which] ... cannot be executed...." *Id.* at 91–92 (citation omitted). Our superior court recognized that "remission of the punitive discharge does not affect the power of ... appellate tribunals to act on the findings and sentence." *Id.* at 92. In her concurring opinion, former Chief Judge Crawford suggested the President amend regulations to prevent similar scenarios from occurring in the future. *Id.*

Subsequent to CAAF's opinions in *Vanderbush* and *Steele,* Army Reg. 27–10, para. 5–16. *b* was amended on 14 October 2002 to read:

> After any charge is preferred, the DD Form 458 [Charge Sheet] will automatically act to suspend all favorable personnel actions including discharge, promotion, and reenlistment.... After preferral of a charge, regardless of any action purporting to discharge or separate a soldier, any issuance of a discharge certificate is void until the charge is dismissed or the convening authority takes initial action on the case in accordance with R.C.M. 1107; all other favorable personnel actions taken under such circumstances are voidable.

The regulation concerning administrative discharges of enlisted Soldiers, Army Reg. 635–200, Active Duty Enlisted Administrative Separations, para. 1–22. *d* (6 June 2005) states: "Soldiers under a sentence to an unsuspended dishonorable or bad conduct discharge will not be discharged before appellate review is completed, unless so directed by HQDA." A similar provision appears in the reserve component regulation: "The separation authority delegated to commanders [for administrative discharges] by this regulation will not include the authority to discharge a soldier under [a] court-martial sentence that includes a dishonorable or bad conduct discharge, prior to the completion of appellate review, unless the discharge is directed by HQDA." Army Reg. 135–178, Enlisted Administrative Separations, para. 1–10 (10 December 2004).

## DISCUSSION

Changes to the applicable service regulation governing military justice dictate an outcome different than the *Steele* result. Under the facts and regulations applicable in this case, although appellant received an honorable discharge after trial, any purported discharge was void because the effective date of discharge predated the convening authority's initial action.

As a general rule, Soldiers are discharged at the expiration of their service obligation; however, each service has statutory authority to determine how its members are "terminated" from military service. *See* 10 U.S.C. § 802(c) (service member is subject to the UCMJ "until such person's active service has been terminated in accordance with law or regulations promulgated by the Secretary concerned"). In the exercise of that authority, the services may impose proper legal impediments to discharge, including those that continue court-martial jurisdiction once it has attached. *See United States v. Melanson,* 53 M.J. 1, 4 (C.A.A.F.2000) (applicable service regulation controlled date and time of discharge).

■ While the 2002 revision of AR 27–10 did not completely implement former Chief Judge Crawford's recommendations in *Steele,* it did attempt to address concerns regarding erroneous or premature administrative discharges in military justice cases. The amendment rendered void any administrative discharge of a charged Soldier "until the charge is dismissed *or the convening authority takes initial action on the case.*" AR 27–10, para. 5–16. *b* (emphasis added). Such erroneous or premature discharges deprive the Army of court-martial jurisdiction over a

charged Soldier and, in post-trial cases, disturb the province of the court-martial and usurp the power of the convening authority by preventing execution of an adjudged punitive discharge. Applying the clear and unambiguous language of AR 27–10, which we find consistent and in agreement with 10 U.S.C. § 802(c), the administrative discharge issued to appellant before initial action is void. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241–42, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (plain language will control unless use of the plain language would lead to an absurd result).

While not a factor in resolution of this case, our review of the applicable regulations reveals an anomalous conflict which could cause the unintended consequences against which Chief Judge Crawford warned in *Steele.* Applicable personnel regulations, AR 635–200 and AR 135–178, preclude administrative discharge of a Soldier sentenced to a punitive discharge until appellate review is *complete.* However, the Army's military justice regulation, AR 27–10, precludes administrative discharge only until initial action, thereby permitting discharge before appellate review *begins.* Since all Army regulations are issued under authority of the Secretary of the Army, this creates a regulatory inconsistency wherein the military justice regulation could arguably validate an administrative discharge issued after initial action that would otherwise be impermissible under the personnel regulations.

If Army officials wish to preclude such an unintended consequence, they should adopt a uniform standard among the applicable regulations clarifying separation authority over active duty and reserve component officers and enlisted members once court-martial charges have been preferred. In the post-trial phase and prior to initial action, the regulations should uniformly provide that administrative discharges are *void* unless approved by a clearly identifiable separation authority.[4] Regulations should also uniformly state any issuance of an administrative discharge to a Soldier with an approved punitive discharge is *void* prior to completion of appellate review and final action without ap-

proval of the service secretary or his named designee.

## CONCLUSION

Regardless of the concerns we raise above, the applicable regulations are in agreement as applied to the facts of this case. As appellant received an administratively issued honorable discharge issued *before* initial action, the clear and unambiguous language in AR 27–10, para. 5–16. *b* is controlling: the administratively issued discharge is void and does not remit or otherwise affect the approved bad-conduct discharge.

On consideration of the entire record, including the assignment of error and matters personally asserted by appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), the findings of guilty and the sentence are affirmed.

Senior Judge HOLDEN and Judge CONN concur.

---

4. The designation of the separation authority as "HQDA," as appears in several personnel regulations, is not helpful. That general term is imprecise and subject to multiple interpretations, especially in cases such as the one before us when the accused was serviced by both active and reserve component personnel centers. For example, administrative separation authority for officers sentenced to dismissal or dishonorable discharge is reserved to the Commanding General, HRC. *See generally* Army Reg. 600–8–24, Personnel–General: Officer Transfers and Discharges, para. 1–18 (12 April 2006).