UNITED STATES, Appellee,

v.

Specialist Melanie A. McPHERSON,
United States Army, Appellant.

ARMY 20070115.

U.S. Army Court of Criminal Appeals.

31 Aug. 2009.

For Appellant: Lieutenant Colonel Matthew M. Miller, JA; Major Bradley M. Voorhees, JA; Captain Richard P. Pizur, JA (brief on remand); Colonel Christopher J. O'Brien, JA; Lieutenant Colonel Steven C. Henricks, JA; Major Teresa L. Raymond, JA (original brief).

For Appellee: Colonel Denise R. Lind, JA; Lieutenant Colonel Francis C. Kiley, JA; Major Lisa L. Gumbs, JA; Captain Anthony O. Pottinger, JA (brief on remand); Colonel John W. Miller II, JA; Major Elizabeth G. Marotta, JA; Major Tami L. Dillahunt, JA; Major Dana E. Leavitt, JA (original brief).

Before CONN, Senior Judge, HOFFMAN, and GIFFORD, Appellate Military Judges.

## OPINION OF THE COURT ON REMAND

HOFFMAN, Judge:

A military judge sitting as a special court-martial convicted appellant, contrary to her pleas, of desertion with intent to avoid hazardous duty, in violation of Article 85, Uniform Code of Military Justice, 10 U.S.C. § 885 [hereinafter UCMJ]. Pursuant to her plea, appellant was also convicted of missing movement by design in violation of Article 87, UCMJ, 10 U.S.C. § 887. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for three months, to forfeit $867 pay per month for three months, and a reduction to Private E1. This case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

Appellate defense counsel argues appellant's purported administratively-issued honorable discharge remits the adjudged and approved bad-conduct discharge and rank reduction, rendering them a nullity. We agree with appellant, in part: the administrative discharge issued after initial action remits the approved bad-conduct discharge. We will grant appropriate relief in our decretal paragraph. In doing so, we consider application of Army regulations concerning administrative discharge of Soldiers subject to punitive discharge after a court-martial conviction.

## PROCEDURAL HISTORY

On 23 January 2009, the United States Court of Appeals for the Armed Forces (CAAF) remanded appellant's case to this court for further consideration on the following granted issue:

WHETHER AN HONORABLE DISCHARGE FROM THE UNITED STATES ARMY RESERVE, WITH ACCOMPANYING ORDERS, EFFECTIVE AFTER SENTENCING BUT PRIOR TO ACTION BY THE CONVENING AUTHORITY, HAS THE EFFECT OF REMITTING THE BAD-CONDUCT DISCHARGE ADJUDGED AT THE APPELLANT'S COURT-MARTIAL AND LATER APPROVED BY THE CONVENING AUTHORITY. *SEE STEELE V. VAN RIPER*, 50 M.J. 89 (C.A.A.F. 1999).

In addition, this court specified the following related issue:

IF APPELLANT HAS PROVEN SHE RECEIVED A FINAL ACCOUNTING OF PAY, *SEE UNITED STATES V. HART*, 66 M.J. 273 (C.A.A.F.2008), WAS ANY PURPORTED DISCHARGE VOIDED BY THE PRIOR PREFERRAL OF CHARGES[?] *SEE* ARMY REG. 27-10, LEGAL SERVICES: MILITARY JUSTICE, PARA. 5-16 (16 NOV. 2005) [HEREINAFTER AR 27-10].

## BACKGROUND and FACTS

Appellant enlisted in the Army on 16 August 1999. From August 1999 to December 2002, appellant was a reserve component Soldier. After two and a half years, appellant was assigned to the Individual Ready Reserve (IRR).

On 1 April 2006, appellant was recalled from the IRR and assigned to Fort Bliss, Texas, in preparation for deployment to Iraq. Concerned her job assignment in Iraq would entail something other than her military occupational specialty (MOS), appellant left Fort Bliss and remained absent without leave from 28 July 2006 until turning herself into authorities on 8 September 2006.

On 7 November 2006, the government charged appellant with desertion with intent to avoid hazardous duty, in violation of Article 85, UCMJ, and missing movement by design, in violation of Article 87, UCMJ. On 11 December 2006, appellant's command initiated a "Non-Transferable" flag on appellant's personnel records. *See* Dep't of Army, Form 268—Report to Suspend Favorable Personnel Actions (FLAG) (Jun.1987) [hereinafter DA Form 268]. The legal effect of a flag is to preclude various favorable actions, including a discharge, when a person is the subject of an investigation that may lead to trial by court-martial. *See* Army Reg. 600-8-2, Personnel—General: Suspension of Favorable Personnel Actions (Flags), para. 1-14. *g* (23 Dec. 2004) [hereinafter AR 600-8-2].

On 5 February 2007, the military judge tried and sentenced appellant. Her case, which included a sentence to a bad-conduct discharge, then proceeded to the post-trial processing phase.

On 8 February 2007, appellant received permanent change of station orders transferring her from Fort Bliss, Texas, to Fort Sill, Oklahoma, with "confinement at Naval Consolidated Brig [ ] Miramar, CA." After serving a short period of confinement, appellant was released on 15 April 2007 and placed on voluntary excess leave.

On 21 August 2007, appellant received administrative orders, issued by the United States Army Human Resources Command (HRC), discharging her from the reserve component in the grade of Specialist E4 with an honorable characterization of service, effective 21 April 2007 [hereinafter first administrative discharge]. In conjunction with those orders, appellant was issued a Dep't of Def., Form 256A (Honorable Discharge Certificate) (May 2000) [hereinafter DD Form 256A].

On 14 September 2007, the convening authority took initial action on appellant's case approving, *inter alia*, the adjudged bad-conduct discharge but not ordering it executed.[1] The convening authority also approved and

---

1. This is consistent with Rule for Courts-Martial [hereinafter R.C.M.] 1113(c)(1). A punitive dis-
charge cannot be executed until appellate review has been waived or completed. R.C.M. 1209.

executed the adjudged reduction in grade to Private E1.

Approximately eighteen months after the discharge was issued, on 18 February 2009, HRC voided appellant's first discharge because it was "erroneously" issued. In an affidavit admitted as an appellate exhibit, an employee of HRC acknowledged appellant received the first administrative discharge because she reached her end of term of service (ETS). The employee asserted this discharge was in error because appellant's ETS was not changed in the computer system after court-martial charges were preferred. In pleadings, the government also asserts the revocation of the first discharge was partially due to an arrearage of monies owed to the Army; on 20 February 2009 appellant was informed her tax refund was being garnished to satisfy the debt owed to the Army.

On 20 February 2009, appellant received orders reassigning her from "USAR (AT) to USAR (REINF)." On 24 February 2009, appellant received orders evidencing she was again discharged from the United States Army Reserve at the rank of Specialist E4 with an honorable characterization of service [hereinafter second administrative discharge]. An accompanying honorable discharge certificate, DD Form 256A, was entered as an appellate exhibit.

## LAW

In *Smith v. Vanderbush,* 47 M.J. 56, 57 (C.A.A.F.1997), although the accused had been charged and arraigned, the CAAF found jurisdiction over the accused terminated when he received a discharge certificate (DD Form 214) separating him on the expiration of his term of service. The court noted the Army could have "provided regulatory procedures to ensure that no official other than a convening authority (or other designated official) was empowered to issue an administrative discharge to an accused after arraignment." *Id.* at 58.

In *Steele v. Van Riper,* 50 M.J. 89 (C.A.A.F.1999), the CAAF considered the effect of an administrative discharge given after trial, but prior to the convening authority taking initial action on a sentence that included a punitive discharge. The CAAF held: "The earlier honorable discharge through administrative channels had the effect of remitting the [adjudged] bad-conduct discharge . . . [, which] . . . cannot be executed. . . ." *Id.* at 91–92 (citation omitted). Our superior court recognized that "remission of the punitive discharge does not affect the power of . . . appellate tribunals to act on the findings and sentence." *Id.* at 92. In her concurring opinion, former Chief Judge Crawford suggested the President amend regulations to prevent similar scenarios from occurring in the future. *Id.*

Subsequent to CAAF's opinions in *Vanderbush* and *Steele,* AR 27–10, para. 5–16. *b* was amended on 14 October 2002 to read:

> After any charge is preferred, the DD Form 458 [Charge Sheet] will automatically act to suspend all favorable personnel actions including discharge, promotion, and reenlistment. . . . After preferral of a charge, regardless of any action purporting to discharge or separate a soldier, any issuance of a discharge certificate is void until the charge is dismissed or the convening authority takes *initial action* on the case in accordance with R.C.M. 1107; all other favorable personnel actions taken under such circumstances are voidable. (emphasis added).

Recently this court distinguished *Steele,* holding, "AR 27–10, para. 5–16, automatically void[s] any purported discharge because the administrative discharge occurred prior to initial action." *United States v. Estrada,* 68 M.J. 548, 549 (Army Ct.Crim.App. 5 August 2009). Our court noted *in dicta* a potential issue left unresolved by the 2002 amendment to AR 27–10:

> [O]ur review of the applicable regulations reveals an anomalous conflict which could cause the unintended consequences against which Chief Judge Crawford warned in *Steele.* Applicable personnel regulations, AR 635–200 and AR 135–178, preclude administrative discharge of a Soldier sentenced to a punitive discharge until appellate review is *complete.* However, the Army's military justice regulation, AR 27–10, precludes administrative discharge only

until initial action, thereby permitting discharge before appellate review *begins*. Since all Army regulations are issued under authority of the Secretary of the Army, this creates a regulatory inconsistency wherein the military justice regulation could arguably validate an administrative discharge issued after initial action that would otherwise be impermissible under the personnel regulations.

*Id.*, at 551.

The Army's enlisted administrative discharge regulation, Army Reg. 635–200, Active Duty Enlisted Administrative Separations, para. 1–22.*d* (6 June 2005) [hereinafter AR 635–200], states: "Soldiers under a sentence to an unsuspended dishonorable or bad conduct discharge will not be discharged before appellate review is completed, unless so directed by HQDA." A similar provision appears in the reserve component regulation: "The separation authority delegated to commanders [for administrative discharges] by this regulation will not include the authority to discharge a soldier under [a] court-martial sentence that includes a dishonorable or bad conduct discharge, prior to the completion of appellate review, unless the discharge is directed by HQDA." Army Reg. 135–178, Enlisted Administrative Separations, para. 1–10 (10 July 2006) [hereinafter AR 135–178].

## DISCUSSION

■ As this court found in *Estrada*, the Secretary of the Army amended AR 27–10 to void administrative discharges issued prior to the convening authority's initial action. However, as we noted in *Estrada*, the modification to AR 27–10 left unaddressed the potential for an administrative discharge after initial action when an appellant is sentenced to a punitive discharge. In the present case, appellant received an administrative discharge both prior to and after initial action.

Consistent with our holding in *Estrada*, appellant's first administrative discharge, issued prior to initial action, is void pursuant to AR 27–10, para. 5–16.*b*. Consequently, the remaining question in this case is whether another Army regulation acts to void appellant's purported discharge *after* initial action but prior to the completion of appellate review. In interpreting service regulations, we apply the general rules of statutory construction. *See generally United States v. Custis*, 65 M.J. 366, 370 (C.A.A.F.2007).

■ In this case, both appellant and appellee point us to the Army's enlisted separation regulations, AR 635–200 and AR 135–178. Appellee contends these regulations prevent an accused with an adjudged punitive discharge from being administratively discharged during the course of appellate review.[2] The precise language of each of these regulations indicates an administrative discharge while pending appellate review cannot be approved unless directed by Headquarters Department of Army (HQDA). Appellant, however, counters that, as a component of HQDA, HRC is authorized to direct appellant's discharge. Appellant asserts, therefore, the discharge she received from HRC after initial action is valid.

Applying the interpretive rules of statutory construction, we agree with appellant. In criminal matters, we are constrained from interpreting a vague and imprecise regulatory provision against appellant and for the benefit of the government. *See generally Hughey v. United States*, 495 U.S. 411, 422, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990) ("[L]ongstanding principles of lenity ... demand resolution of ambiguities in criminal statutes in favor of the defendant...."). As we noted in *Estrada*, the designation of the separation authority to be "HQDA," as it appears in several personnel regulations, is broadly ambiguous.[3] The regulation fails to

---

2. This interpretation would seem to be consistent with the dissent in *Vanderbush*, 47 M.J. at 63, where Judge Sullivan commented the "plain meaning of the language of [AR 635–200, para. 1–24.*b*] establishes a regulatory bar to Vanderbush's discharge until his court-martial charges have been resolved."

3. *See, e.g.* Headquarters, Department of the Army, General Order No. 3, para. 20 (dated 9

July 2002), stating the Deputy Chief of Staff, G–1, is part of the HQDA hierarchy and has broad duties including oversight of human resources support; Headquarters, Department of the Army, General Order No. 7, para. 6 (dated 30 September 2003) ("HRC will serve as the Deputy Chief of Staff, G–1's functional proponent of military

either specify or limit what entity is HQDA for the purpose of directing discharge.[4] Consequently, appellant's second administrative discharge issued by HRC remits appellant's approved bad-conduct discharge.

Even if we held HRC had no authority to administratively discharge a Soldier pending appellate review, the government provided no evidence that either an Army regulation or a proper authority voided or revoked appellant's second administrative discharge; therefore, the second discharge is still valid. Unlike the precise language of AR 27–10 which acts to "void" any administrative discharge, AR 635–200 and AR 135–178 fail to state an erroneous discharge is void *ab initio;* instead, these regulations state only that such a discharge "will not" occur.[5] *See generally Massachusetts v. Oakes,* 491 U.S. 576, 584, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989) ("An overbroad statute is not void *ab initio,* but rather voidable, subject to invalidation."). Though an act is prohibited or subject to invalidation, it is not therefore automatically void. *See generally United States v. Reid,* 46 M.J. 236, 238 (C.A.A.F.1997) (noting that, by its statutory language, Congress in effect made a fraudulent discharge voidable and not void); *United States v. Valadez,* 5 M.J. 470, 472 (C.M.A.1978) (by statutory language an enlistment contract is not void, merely voidable). Army Regulations 635–200 and 135–178, consequently, are ambiguous as to the effect of an erroneously-issued administrative discharge. Consequently, by the terms of these regulations, an erroneously issued discharge after initial action would only be voidable, not void.[6]

Regardless of whether the regulations cited by appellee were intended to prevent erroneous administrative discharges prior to execution of a punitive discharge, this court will apply *stare decisis* and long-standing principles of interpretation regarding service regulations. Just as Congress should speak "in language that is clear and definite," so too should our service regulations. We will continue to interpret those regulations in favor of an accused when there are ambiguities. *Cleveland v. United States,* 531 U.S. 12, 25, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000). As former Chief Judge Crawford noted in *Steele* and this court noted in *Estrada,* in the future the Army can prevent such discharges from occurring by regulatory amendment. The Army should, therefore, update all applicable regulations to *void* administrative discharges prior to completion of appellate review, unless approved by a specifically designated authority.

Even though appellant was administratively discharged from the Army, this does not eliminate this court's jurisdiction for appel-

---

personnel branch.... The HRC commander supports the Deputy Chief of Staff, G–1 in the management of all military personnel.").

**4.** *Cf.* Army Reg. 600–8–24, Personnel–General: Officer Transfers and Discharges, para. 1–18 (12 April 2006) (Administrative separation authority for officers sentenced to dismissal or dishonorable discharge is reserved to the Commanding General, HRC); AR 635–200, para. 1–17.*b.* (1); AR 27–10, para. 5–2, AR 135–178, para. 1–10.

**5.** " 'Void' is defined as 'an instrument or transaction [that] is nugatory and ineffectual so that nothing can cure it,' Black's Law Dictionary 1573 (6th ed.1990); and as that 'of no legal force or effect and so incapable of confirmation or ratification.' Webster's Third New International Dictionary 2562 (1971)." *Easley v. Pettibone Mich. Corp.,* 990 F.2d 905, 909 (6th Cir.1993). " 'Voidable' is defined as 'not void in itself,' Black's Law Dictionary 1574 (6th ed.1990), and as 'capable of being adjudged void, invalid, and of no force,' Webster's Third New International

Dictionary 2562 (1971)." *Easley,* 990 F.2d at 909.

**6.** We considered appellee's assertion that the unit's action of flagging appellant pursuant to AR 600–8–2 voided any purported discharge throughout appellate review process. *See generally United States v. Hart,* 66 M.J. 273, 278 (C.A.A.F.2008); *United States v. Williams,* 53 M.J. 316, 317 (C.A.A.F.2000); *United States v. Howard,* 20 M.J. 353, 354–55 (C.M.A.1985). We find AR 600–8–2 inapplicable for three reasons. First, appellant reached her ETS before the date of her first administrative discharge; thereby, making the flagging regulation inapplicable. *See* AR 600–8–2, para. 1–16. Second, the flagging regulation, along with appellant's DA Form 268, specifically state the flag based on court-martial proceedings is nontransferable to a Soldier's next unit. *See* AR 600–8–2, para. 1–12. *a.*(2). Appellant was transferred from Fort Bliss to Fort Sill, making the "flag" without legal effect. Finally, as we noted in relation to AR 635–200 and 135–178, AR 600–8–2 fails to "void" discharges issued in contravention of its provisions.

late review and our power to act on the findings and sentence. *See Steele,* 50 M.J at 91. Nor does it prevent this court from affirming a sentence including an otherwise lawfully approved reduction to Private E1.[7] It does, however, have the effect of remitting the adjudged bad-conduct discharge. *See Steele,* 50 M.J at 92.

### CONCLUSION

The findings of guilty are affirmed. As a result of appellant's administrative discharge, the bad-conduct discharge cannot be executed. That portion of the convening authority's action approving the bad-conduct discharge is set aside and the bad-conduct discharge is remitted. *See* Article 66(e), UCMJ. The remaining sentence is approved. All rights, privileges, and property of which appellant has been deprived by virtue of the bad-conduct discharge are ordered to be restored. *See* Articles 58b(c) and 75(a), UCMJ, 10 U.S.C. §§ 858b(c) and 875(a).

Senior Judge CONN and Judge GIFFORD concur.

7. Because appellant's adjudged reduction to Private E1 was approved and executed by the convening authority prior to her second administrative discharge, we affirm the convening authority's action regarding reduction in grade. We note the evidence in the appellate record suggests appellant was administratively discharged as a Specialist E4. To the extent appellant was erroneously discharged at a grade higher than otherwise permitted, HRC has means by which to make corrections. *See* Army Reg. 635–5, Personnel Separations: Separation Documents, para. 1–11. *e* (15 Sep. 2000).