UNITED STATES, Appellee

v.

Jessica E. ESTRADA, Sergeant
U.S. Army, Appellant

No. 09-0822

Crim. App. No. 20070778

United States Court of Appeals for the Armed Forces

Argued April 20, 2010

Decided June 7, 2010

STUCKY, J., delivered the opinion of the Court, in which EFFRON, C.J., and BAKER, ERDMANN, and RYAN, JJ., joined.


Counsel


For Appellant:  Captain Michael E. Korte (argued); Colonel Mark Tellitocci, Lieutenant Colonel Matthew M. Miller, and Captain Shay Stanford (on brief); Major Bradley M. Voorhees.

For Appellee:  Major Lynn I. Williams (argued); Colonel Norman F. J. Allen III, Lieutenant Colonel Martha L. Foss, and Major Christopher B. Burgess (on brief).

Military Judge:  Richard Gordon


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge STUCKY delivered the opinion of the Court.

This case requires us once again to consider the interaction between administrative discharges of military personnel and punitive discharges adjudged by courts-martial. This Court and the Courts of Criminal Appeals have seen a number of these cases, which usually arise in the context of personal jurisdiction over the appellant.  See, e.g., United States v. Hart, 66 M.J. 273 (C.A.A.F.), cert. denied, 129 S. Ct. 310 (2008); United States v. Harmon, 63 M.J. 98 (C.A.A.F. 2006); Smith v. Vanderbush, 47 M.J. 56 (C.A.A.F. 1997); Webb v. United States, 67 M.J. 765 (A.F. Ct. Crim. App. 2009); Lawrence v. Maksym, 58 M.J. 808 (N-M. Ct. Crim. App.), pet. denied, 59 M.J. 123 (C.A.A.F. 2003).  Here, the issue is not personal jurisdiction but the effect, if any, of an administrative discharge on an unexecuted punitive discharge adjudged by a court-martial.

In this case, the military judge sentenced Appellant, a reservist serving on active duty, to a bad-conduct discharge. After trial, but before the convening authority took initial action, the United States Army Human Resources Command issued her administrative discharge orders.  She also received a Department of Defense Form 214 (Certificate of Release or Discharge from Active Duty).  Later, the convening authority approved the bad-conduct discharge.  The United States Army

2

Court of Criminal Appeals (CCA) held that the administrative discharge was void. United States v. Estrada, 68 M.J. 548, 551 (A. Ct. Crim. App. 2009). We granted review to determine whether the administrative discharge resulted in remission of the bad-conduct discharge. On these facts, we affirm the judgment of the CCA.

## I.

Appellant's convictions stem from filing false travel vouchers and fraudulent receipts for rental property expenses. A special court-martial consisting of a military judge sitting alone convicted Appellant, consistent with her pleas, of thirteen specifications of signing and submitting a false official record, and larceny. Articles 107 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 921 (2006). On July 9, 2007, the military judge sentenced Appellant to a bad-conduct discharge, confinement for ninety days, and reduction to the lowest enlisted grade. The convening authority approved the sentence but limited confinement to fifty-seven days. The CCA affirmed. Estrada, 68 M.J. at 551.

## II.

The CCA summarized the post-trial developments as follows:

> On 24 and 25 September 2007, appellant received two different sets of administrative orders. The first set, issued by officials at Fort Benning, Georgia, released her from active duty and returned her to the Reserve Component, effective 24 September

2007. The second set, issued by United States Army Human Resources Command (HRC), discharged her from the reserve component in the grade of Private E1 with an honorable characterization of service, effective 25 September 2007. In conjunction with the first set of orders, appellant was issued a Dep't. of Def., Form 214, Certificate of Release or Discharge from Active Duty (Feb. 2000) [hereinafter DD Form 214].

On 2 November 2007, the convening authority took initial action on appellant's case, inter alia, approving the adjudged bad-conduct discharge but not ordering it executed.

Approximately sixteen months after the discharge was issued, on 6 January 2009, HRC voided appellant's discharge to the reserve component because it was erroneously issued. On 12 January 2009, Army personnel officials at Fort Benning, Georgia, voided appellant's DD Form 214.

Id. at 549 (brackets in original) (footnote omitted). The CCA held that an Army regulation, Dep't of the Army, Reg. (AR) 27-10, Legal Services, Military Justice para. 5-16 (Nov. 16, 2005), "automatically voided any purported discharge because the administrative discharge occurred prior to initial action." 68 M.J. at 549.

                              III.

Appellant argues that the honorable discharge she received prior to the convening authority's initial action remitted the adjudged bad-conduct discharge. Appellant also claims the CCA erred in construing AR 27-10 as automatically voiding the administrative discharge because other, more recent regulations establish different procedures.

4

In Steele v. Van Riper, 50 M.J. 89, 92 (C.A.A.F. 1999), a case arising in the Marine Corps, this Court held that an administrative discharge given after trial, but prior to the convening authority's initial action on a sentence, remitted an adjudged bad-conduct discharge.  Judge Crawford concurred in the result, based on the Government's concessions, but suggested that Department of Defense and service regulations should be amended to prevent similar scenarios from recurring.  Id. (Crawford, J., concurring in the result).

In October 2002, the Army amended AR 27-10 to read:

> After any charge is preferred, the DD Form 458 [charge sheet] will automatically act to suspend all favorable personnel actions, including discharge, promotion, and reenlistment. . . . After preferral of a charge, regardless of any action purporting to discharge or separate a Soldier, any issuance of a discharge certificate is void until the charge is dismissed or the convening authority takes initial action on the case in accordance with R.C.M. 1107; all other favorable personnel actions taken under such circumstances are voidable.

AR 27-10 para. 5-16.b (formerly para. 5-15.b) (emphasis added). Other Army regulations apply different rules to soldiers who are administratively discharged at other stages of the court-martial process.[1]

---

[1] Army regulations also permit the imposition of an administrative "flag," which prohibits certain personnel actions, including discharges.  AR 600-8-2, Personnel-General, Suspension of Favorable Personnel Actions (Flags) para. 1-14 (Dec. 23, 2004).  Other regulations touch upon administrative discharges for different types of servicemembers:  Active duty

IV.

Construction of regulations is a question of law, which we review de novo.  United States v. McCollum, 58 M.J. 323, 340 (C.A.A.F. 2003); United States v. Phillips, 18 C.M.A. 230, 234, 39 C.M.R. 230, 234 (1969).  Similarly, we review a "challenge to the lawfulness of [a] regulation de novo."  United States v. Hughey, 46 M.J. 152, 154 (C.A.A.F. 1997).

In interpreting regulations, we apply the general rules of statutory construction.  United States v. Custis, 65 M.J. 366, 370 (C.A.A.F. 2007)); see also 1 Norman Singer, Statutes and Statutory Construction § 31:6 (6th ed. 2002) ("It is obvious, that inasmuch as a regulation is a written instrument the general rules of interpretation apply.").

---

enlisted "[s]oldiers under sentence to an unsuspended dishonorable or bad conduct discharge will not be discharged before appellate review is completed, unless so directed by [Headquarters, Department of the Army]."  AR 635-200, Personnel Separations, Active Duty Enlisted Administrative Separations para. 1-22.d (June 6, 2005) (emphasis added).  For enlistees in the Army National Guard or Reserve, "[t]he separation authority delegated to commanders by this regulation will not include the authority to discharge a Soldier under [a] court-martial sentence that includes a dishonorable or bad conduct discharge, prior to the completion of appellate review, unless the discharge is directed by [Headquarters, Department of the Army]."  AR 135-178, Army National Guard and Army Reserve, Enlisted Administrative Separations para. 1-10 (Mar. 13, 2007) (emphasis added).  "An officer who has been convicted and sentenced to dismissal or dishonorable discharge will not be discharged prior to completion of appellate review without prior approval of [Commanding General], [Human Resources Command]."  AR 600-8-24, Personnel-General, Officer Transfers and Discharges para. 1-18 (Apr. 12, 2006) (emphasis added).

AR 27-10, para. 5-16 states that a "discharge certificate is <u>void until</u> the charge is dismissed or the convening authority takes initial action." (emphasis added). The key words here are "void" and "until." Void means "[o]f no legal effect; null." <u>Black's Law Dictionary</u> 1709 (9th ed. 2009). "Until" is commonly "used as a function word to indicate movement to and arrival at a destination" and means "up to the time that" or "till such time as." <u>Webster's Third New International Dictionary</u> 2513 (1986).

The juxtaposition of "void" and "until" in AR 27-10 is puzzling, since the former connotes a permanent cessation of legal effect, whereas the latter implies a temporary pause. But the operative word here is the subordinating conjunction "until," which suggests that an administrative discharge issued after preferral of charges is ineffective but may become legally effective in the future. The use of the phrase "to suspend" earlier in the same paragraph supports this reading of the regulation. AR 27-10, para. 5-16.<u>b</u> (a charge sheet "will automatically act to suspend all favorable personnel actions").

Thus, contrary to Appellant's argument, "void until" does not mean that an administrative discharge promulgated after sentencing automatically remits a convening authority's subsequent approval of a bad-conduct discharge. If we interpreted AR 27-10 as Appellant suggests, a single

administrative error could nullify months of legal proceedings and strip the convening authority of meaningful power to approve a sentence. That construction would create the situation that the revision to AR 27-10 sought to avoid. The record reflects that the Army amended AR 27-10, para. 5-16 to remedy the problems of Steele and "ensur[e] no loss of jurisdiction" and the practical problems associated with it. See also Estrada, 68 M.J. at 550; Steele, 50 M.J. at 92 (Crawford, J., concurring in the result). We read AR 27-10 in accordance with this evident intent -- that a convening authority's subsequent approval of a punitive discharge supersedes a previous, erroneously issued, administrative discharge.

This interpretation is not affected by other regulations prohibiting execution of a discharge until after appellate review is complete -- whereas AR 27-10 effectively suspends it until the convening authority takes initial action. See supra note 1. The CCA correctly noted that this is a "regulatory inconsistency wherein the military justice regulation [AR 27-10] could arguably validate an administrative discharge issued after initial action that would otherwise be impermissible under the personnel regulations." 68 M.J. at 551. But this "anomalous conflict" is "not a factor" that is dispositive here. Id. Appellant's putative administrative discharge occurred before initial action, and thus does not implicate the differing time

frames for prohibiting the execution of a discharge in AR 600-8-2, AR 600-8-24, and AR 635-200.

As the CCA noted in considerable detail, AR 27-10 is anything but a model of clarity.  See 68 M.J. at 551.  To avoid continuing confusion concerning this issue, Army officials may wish to adopt "a uniform standard among the applicable regulations," and spell out key terms and conditions for when a pending administrative discharge comes back into effect.  Id.

V.

The judgment of the United States Army Court of Criminal Appeals is affirmed.